and Hirschlag et al. On behalf of the Appalachians, Mr. Theodore Liebowitz. On behalf of the Appalachian Andrews Pearson, Scott Calkins. On behalf of Hirschlag, Jeffrey Hardy. Thank you. Mr. Liebowitz. Good morning, Your Honors. Theodore Liebowitz of the firm Liebowitz & Weber on behalf of the plaintiff appellants Sharon Marner and Gary Packard. The defendants Hirschlag and Pearson committed acts giving rise to grounds for a constructive trust. By pursuing the previous lawsuit without notifying the plaintiffs that they were doing so. By failing to name the plaintiffs as co-defendants in the previous lawsuit. By resisting a motion brought by the previous trustee defendant Martha Andrews to join the plaintiffs in the previous litigation. And by settling the first lawsuit to their advantage and the plaintiffs exclusion and detriment. The defendants conspired with the former trustee to breach her fiduciary duties under the trust agreement. Martha Andrews breached her fiduciary duties owed to the plaintiffs and failed to comply with the terms and conditions of the 1989 trust when she failed to set aside out of the trust estate certain property to be allocated to the Packard family annuities in violation of paragraph 6.02 and 9 of that 1989 trust. Could you be more specific when you say conspired with the trustee to breach her fiduciary duties? Well specifically I'm referring to the settlement agreement which was entered into in the previous litigation. First there was a motion brought by Martha Andrews to include the plaintiff appellants in a previous litigation and the defendants argued vigorously against that and convinced the court not to include the plaintiffs. Does that then mean that the court was involved in the conspiracy as well? No, Your Honor. It means that the plaintiffs, excuse me, the defendants and Martha Andrews came together to create this settlement agreement and the settlement agreement by its terms distributed a little under two million dollars to the defendants and distributed nothing to the plaintiffs. What duty is owed between these parties? Well, there is a duty to include the plaintiffs as parties in the previous litigation. Based on? Based upon the fact that they are indispensable parties to their previous litigation. Couldn't your clients have brought their own action? Couldn't they have pursued something for their non-payment pursuant to the terms of the trust? They could have brought their own action. Aren't they responsible for their failure to act? Well, they could have brought their own action had they known that the trustee was not, she was breaching her... Well didn't they notice that they weren't receiving the payments under the trust? They noticed that they weren't receiving the payments and it's not contained within the four corners of the pleadings, but it was a very complicated estate and they could have easily reached the presumption that a lot of the real estate deals and entanglements had to be straightened out before distributions could have been made. They were given no notification by the trustee or... What is the basis for your clients to have received notice? Where, either in the trust or in any statute, is that duty created? Well, the duty I believe is created by case law which states that they are, well and also by statute, the Civil Practice Act... Indispensable party? As an indispensable party. But the court ruled otherwise. And I believe the court was in error when it ruled otherwise. Nonetheless, that's the law of the case. It's the law of the case, but there is also case law which states that if the court made that ruling, the ruling is void or the result of the ruling is void because the plaintiffs should have been included as parties. And if that's true, if the ruling of the previous court is void for not including indispensable parties, then the plaintiffs have a right to come in at any time thereafter and to actually set aside the effect of that judgment. Did you plead that? No, that wasn't specifically put in the arguments. Are you raising it now? I am raising it now as an argument, yes. So now you're raising the argument that the order that was entered that involved the settlement between the defendants and the trustee was a void order because of the indispensable nature of your clients? Well, it's a collateral argument. I'm not arguing directly as a reason for reversal or remand. What I'm arguing is that because of that, a constructive trust then was created on the funds which were received by the defendants in this case. And the principles of creation of equitable trust, including equitable principles, should allow a recovery of those funds. And a constructive trust is an equitable remedy imposed against one who by some form of wrongdoing, such as actual or constructive fraud, breach of fiduciary duty, duress, coercion, or mistake, has been unjustly enriched. Which one of those applies? I know you say it's breach of fiduciary duty. How do the recipients in that settlement agreement have a fiduciary duty to your clients? They don't. Well, they do, actually. They do because they, in effect, put themselves into a position to be representatives of a class, the class of beneficiaries who were to receive distribution from this trust. And putting themselves into that position, they, in effect, have fiduciary duty to all of the beneficiaries to see that the beneficiaries were treated according to the terms of the trust agreement. Did you plead that anywhere in your complaint either? I think I missed that. That was not... No, that was not pled in the complaint. How many trusts are there? Well, there's one trust. But there seem to be so many different subgroups or whatever. Well, out of that trust, there's actually two groups of beneficiaries that are in question in this litigation. One is the Pearson Trust, or the Amundsen Trust. The Anderson Trust? Amundsen. Amundsen. Yes. And the trustee of that trust is Sue Pearson. And that's a request of $3 million to be funded out of the Andrews Trust, which is the original testimony... Is the Andrews Trust the one that's called the 1989 Trust? The Andrews Trust is the 1989 Trust, yes. So there are at least two trusts, correct? Correct. And the other group... And how many classes of beneficiaries are in the Amundsen Trust? One. And how many in the Anderson? The Amundsen Trust is one group of beneficiaries. And the other group of beneficiaries is the Packard Inhibitants. The Packard? Packard. So there's a third trust? No, I'm sorry. There's two trusts. I thought you said Amundsen and Anderson? No. There's the Andrews 1989 Trust. I can't even read my own writing. The Andrews 1989 Trust, that's the testamentary trust that does the funding here. Then there's the Amundsen Trust, which is one class of beneficiaries. Then there's the Packard Inhibitants, who's the other class of beneficiaries. And the Packard Inhibitants, or the plaintiffs, as part of the Packard Inhibitants, were not properly represented in the prior litigation. Hirschlag was one of the Packard Inhibitants. Hirschlag settled out and received $425,000. The plaintiffs, as two other Packard Inhibitants, received a total of $35,000 to date. The Pearson Group has received about $1.25 million. If they're members of both of these beneficiary units that participated in the settlement, is that essentially? Yeah. Hirschlag was a member of the Packard Inhibitants. And Sue Pearson was the trustee of the Amundsen Trust. How did the other parties know that this was happening? They weren't given actual notice in terms of litigation, but there was no communication. There was none. And the other members of these beneficiary groups never paid attention to what might be going on? I mean, you said they could possibly presume, because of the complexity of the trust, there were real estate entanglements that had to be resolved and things of this nature, but they never checked? Although it's not pled, I believe that they did some preliminary checks early on and were advised that they had to wait. And how did they find out about the settlement? They discovered the settlement when the original trustee of the Andrews 1989 Trust was withdrawn or removed. And a successor trustee took over. And that successor trustee, for the first time, notified the plaintiffs of the fact that they were beneficiaries, of the fact of what had gone on, and the fact that there was very little left in the trust to distribute to them. But when you say very little left in the trust, did these real estate entanglements become unentangled and resolved, and nothing ever happened? Is that part of the issue? That's part of the issue. The other part of the issue is that this real estate, although it might have had a value far in excess of what it was today, a few years ago, the value dropped dramatically. And as alleged in the complaint, there was quite a bit of money and assets which were improperly diverted by the original trustee. But there is some litigation that still relates to the original trustee that's pending, correct? There is. That litigation continues. Whether or not the plaintiffs will ever be able to recover against that original trustee is a big question mark. So this litigation, this part of the litigation on 304A-5B is here because we know that this money has been paid, or the money is due to be paid or has been provided for? Yes. So essentially what you're saying is that you're suing, I think her name is Bitsy, is that correct? Yes. You're suing Bitsy and attempting to recoup your losses from her, but you're also suing the other beneficiaries for the monies they received and are attempting to have established a constructive trust and reclaim some of the monies that were distributed to them based upon your contention that they should not have received those monies without a pro rata share for your clients. Correct. You've raised a couple of new arguments here this morning. Did you ever put that into an amended complaint? Did you retender that to the court or seek leave to file an amended complaint? No, I had no opportunity to do that. The court, at the end of oral arguments on the motion to dismiss, stated that the complaint was dismissed with prejudice and did not give leave to file an amended complaint. The question is, did you seek leave to file an amended complaint? At the time of the oral arguments? Well, at the time of the argument, before or after? Not before, no. And after the court entered the order and leave to appeal, no. There was not a motion filed seeking leave to amend. And I guess in conclusion, constructive trust may be imposed when a person in possession of the property would be unjustly enriched if he were permitted to retain the property. One retains property under circumstances whereby equity and good conscience, he ought not to keep it, recovery will be allowed under a theory of constructive or resulting trust. And this type of remedy is available under a variety of circumstances, and it is not always necessary that fraud or breach of fiduciary relationship be present to impose such a trust. Our main thrust of our argument is that the defendants caused Bitsy Andrews to breach her fiduciary duties as trustee. Thank you. Thank you. You will have an opportunity to make rebuttal. Thank you. Are you Mr. Calkins? I am, Your Honor. Pardon? I am, Your Honor. Are you going to split your time with Mr. Hardiman? Yes, Your Honor. I'd like to take ten minutes to address the court's questions, and Mr. Hardiman would like to take five minutes. Very well. Thank you. You may proceed. Thank you. Your Honors, my name is Scott Calkins, and I represent Susan Pearson in her capacity as trustee of the Marilyn Amundson Trust. And I think as counsel correctly explained, we really have the 1989 trust on top. That's the trust from which the funding of these other obligations came from. One of these obligations was a $3 million obligation to fund the Marilyn Amundson Trust. Ms. Amundson is the sister of Clayton Andrews, the trustee that made the Intervitals Trust. The other class of beneficiaries is what we've called the Packard annuitants. They're four individuals that are Mr. Andrews' first wife's sister's children. And he chose in his estate planning to make accommodations for those individuals. And as a result, they would each receive what amount of annuities. That's the other class of beneficiaries. Ms. Herschlock is one of those beneficiaries. Your Honor, we represent to the court that based upon the pleadings in this case, there's no allegation of conspiracy, no allegation of constructive fraud, no allegation of unjust enrichment. And the actions that are at issue in this case are all lawful actions undertaken by beneficiaries of a trust. Did the Andrews Trust call for the annuitant payments, the annuitants to have those annuities in place before other things were funded? No, Your Honor. It was a simultaneous funding requirement. Article 9 of the trust deals with the Packard annuitants. Article 10 of the trust deals with Ms. Pearson and the Amundsen Trust. And the idea was the trustee is going to set aside sufficient funds to fund these annuitants and also fund the $3 million in trust. And based upon a 706 return that was filed and some calculations that were done, the determination was made as part of this other litigation that in order to do that, 30% of the funds would need to go to the Packard annuitants and 70% of the funds would need to go to the Amundsen Trust. The idea being the Packard annuitants, when it included Ms. Hirschla, it was about a $1.7 million obligation. They took it on a non-annuitized basis. So if you take the present cash value of that, it would take substantially less. On the other side, the $3 million was a full cash obligation. So the 706 returns that were filed upon Mr. Andrews' death contemplated a roughly 30-70% calculation. And in the original litigation, that was the order that was resolved, is 30-70. So there was sufficient money at some point to fund these two subunits? There was never sufficient liquid assets to do that. At the time of the settlement was reached, in the time the January 26th order was entered in the previous litigation, there was approximately $500,000 in what the court described as cash or cash equivalents. It was substantially liquid assets. There was another $200,000 in stocks that were to be distributed. They were in the process of being sold and would be sold. So there was going to be $700,000-and-some-thousand that was going to be available for distribution. And they would be distributed 30% to the Packard annuitants to fund their annuities, 70% to the Amundsen Trust to fund the $3 million trust obligation. Now, I understand that what the Packard annuitants are saying is, well, wait a second, we never got our share of that. And my response to that is, if that's true, and we'll assume it's true for purposes of the motion to dismiss, the obligation to fund is with the trustee and the trustee only. The Trusts and Trustees Act says the trustee is in charge of distributing the assets. The beneficiaries of a trust under Section 5-8 of the Trusts and Trustees Act are allowed to assume that the trustee is doing that appropriately. So we went in on behalf of the Amundsen Trust and Ms. Ferschlag and got orders saying, trustee, you're not doing your job here. You're not distributing the assets appropriately. You need to distribute them. And you need to distribute them 30%, 70% in accordance with the trust. Now, if, as Mr. Leibovich is arguing, the trustee never did that, his cause of action is against the trustee. We'd be throwing trust law into an absolute state of disarray if we said that beneficiaries now, in contradiction of the statute, have an obligation to go back and say, okay, trustee, I've got a million dollars. Did you distribute it 30% to the other side? Because I know I got my 70%. It's just not the state of trust law. It's just not what it requires. The obligations, if we draw the lines in those three entities, there is a line running from the 1989 trust and the trustee of that trust to the trustee of the Amundsen Trust, and there's a line running from the 1989 trust to the Packard annuitants as a class. But there is no line that runs between the beneficiaries. Beneficiaries don't know what obligation to do. If they were a class, why aren't they an indispensable party? Because one person can represent the full class if they adequately represent it, and that's the Just Pants case that we cite in our brief. Ms. Hirschlag had every motivation. To the extent that the interests were in kind, those interests were in kind because everybody wanted to have a distribution schedule and everybody wanted to determine what should be in the trust. But the differences between the Packard annuitants and the Amundsen Trust diverge when it comes to what percentage is each of those two groups entitled to get. Mr. Harding represented the Hirschlag class or the Packard annuitant class through Ms. Hirschlag. She had every motivation to make sure that the Hirschlags got as large a percentage as possible, or that the Packard annuitants got as large a percentage as possible. So they were adequately represented throughout the proceedings. They had every opportunity to participate in those proceedings and chose not to. How did they know about those proceedings? Your Honor, it's outside the record, but I'll tell you that they had counsel retained. So they knew about the proceedings. I think Mr. Leibovich said they investigated at some point in time whether or not they should participate in proceedings. They also knew that they weren't getting distributions. That seems to me the easiest way to know that you can participate in those proceedings. And they weren't necessary parties to those proceedings, or at least they're not obligated to be brought into the proceedings because the law of trust specifically says that if there are several beneficiaries of a trust, any beneficiary can maintain a suit against the trustee to enforce the duties of the trustee to him or to adjoin or obtain redress for a breach of the trustee's duties to him. It's a personal obligation. And Ms. Pearson, in representing elements in trust, had an obligation as the trustee of that trust to make sure she secured the funds. And so she brought suit to do that. She has no obligation to bring along the Packard annuitants and say, oh, by the way, I know that I'm litigating on this on behalf of my trust, but I owe you some obligation to bring you along. They had an independent obligation to do that, which they didn't take advantage of. Of our two petitioners, or in this case, which one of them, if either, would be entitled to funds through the Amundsen Trust? The Amundsen Trust. Susan Pearson is the trustee of the Amundsen Trust. And who are the members of that trust by name? Who are beneficiaries by name? Your Honor, I'm not quite sure that I know that off the top of my head. Well, let's ask this way. Our two petitioners here, Marner and Packard, are both Packard annuitants?  That is correct. All right. My understanding is the Amundsen Trust is to fund Marlon Amundsen, the sister of the decedent, plus her descendants. Your Honor, if you have further questions for me, I'd be glad to address them. Otherwise, I turn over the rest of my time to Mr. Hardiman so he can address the court. I have none. Thank you. Good morning, Your Honors. My name is Jeff Hardiman. I represent Cynthia Hirschlag. She's a defendant and co-appellee in the appellate case. I was there from the beginning. I represented Cynthia Hirschlag. She was the original plaintiff in the previous lawsuit. Just so we're all clear here, at the end of the previous lawsuit, as far as my client was concerned, there wasn't enough money to distribute and to satisfy all the two different classes of requests. Actually, there was a third beneficiary that we haven't talked about, and that was Bitsy the Widdle, antrustee. Well, Bitsy was the remainder beneficiary, but she didn't really like being the remainder beneficiary. She kind of jumped the line and realleged that she was satisfying her remainder request prior to fulfilling the obligations of the Amundsen Trust as well as the Packard annuitants. So that's why we didn't. It had been over three years since Clayton Andrews passed away. My client had not received any distribution, and she was upset, and she wasn't getting anywhere with her discussions with the trustee, Bitsy. She filed suit. So was your client taking this action on behalf of herself or on behalf of the annuitants? Absolutely, Judge. She was doing this on behalf of herself. She happened to be a member of the Packard annuitant class. And by being in that capacity, she had, as Attorney Calkins stated, she had an absolute interest in making sure that in terms of the order of distribution that was crafted in order to effectuate the settlement, that the Packard annuitants received as great a percentage of that allocation as possible. But really it wasn't any great negotiations or anything. It was just math. It was math. Here's what was reported on the federal state tax return. Here, if we knew that the Amundsen Trust was going to get $3 million, if you calculated all the annuity payments that the four Packard annuitants were going to recover, it came up to a certain amount. Allocate those percentages. It wasn't anything nefarious or under-the-table negotiations. It was math. It was math. Then why oppose the motion for joint? It had been a hard-fought litigation. Three years, here we are on the eve of trial, and Bitsy, in my opinion, to delay her state of execution, comes in and says, well, we don't have all the parties here. That's absolutely wrong. There was no duty to have. The other Packard annuitants were not necessary parties. In fact, as evidenced by the order that was ultimately crafted, their interests are perfectly protected in there. There was an allocation for the Packard annuitants in there. In Paragraph 4 of the- Well, could I interrupt you and clarify something in my mind? If they were protected, then why are they before this court? They do not receive what they feel is the full extent of their bequest, neither did my client, Your Honor. Are they claiming that the allocation was insufficient, or are they claiming that although the allocation was sufficient, there was never any funding by Bitsy or whoever was supposed to fund their annuities? Clearly, Bitsy, as the trustee, had the obligation to fund the annuities. The annuities were not funded, and that's when my client filed suit. At the end of the day, Judge, there wasn't enough money to go around, even with the allocations. Let's do the math. There was $700,000 left at the time. My client- You didn't answer my question. I'm sorry, Your Honor. Because it was a compound question, I thought, and that was, so it's your understanding that the plaintiffs aren't arguing about the allegation. They're arguing about the funding based upon it. I think they're arguing about the allocation, too. In Attorney Leibovich's reply brief, he said that there was- I didn't bring that up, but somehow that funding was in favor of Cindy Hirschlag as a member of the Packard Annuitants and the Amundsen Trust. Well, how can that be? At the end of the day, Judge, my client, most of the majority, most of the money that she received from this settlement was out of Bitsy Andrews' personal funds. Because Bitsy had went up and she budged in line. She went up and took money ahead of the time that she should have. We had to go and get money from Bitsy personally. And so how could the other Packard Annuitants claim that my client's receipt of money, hard-earned, hard-fought money, that she paid a lot of money to retain me and my firm in order to bring this matter to a head and get money from Bitsy personally, which we claim that she had taken unlawfully from the trust, without authority under the trust, to say that they're somehow entitled to those hard-fought gains on my client's behalf? I'm at a loss. Well, it doesn't really matter where they came from because your client, rather, came to a settlement and she was going to take the money from wherever it came from. So, I mean, I don't think that that's critical here. She wanted her money, but she, as a member of this Packard Annuitant, didn't see that there was any reason to either share that money or honor the original allocation. Judge, I disagree entirely. The paragraph 4 of the order of distribution specifically provides, because we knew there wasn't enough money that would satisfy anywhere close to what we settled for, and what my client did settle for was a greatly compromised dollar amount of what she should have received. But in paragraph 4 of the judgment for the order of distribution says that Bitsy, the successor trustee, shall pay from her own personal funds and not from the trust rates such additional sums so that Cindy Hershock shall receive her total amount of $435,000 after applying her share of the Packard Annuitant allocation referred to above in the previous sections. So we crafted this rational, fair, equitable allocation based upon the numbers in the 706 return as well as the amounts of the Packard Annuitant annuities that they were to receive. Well, if it was being so fair, why didn't you let the other parties participate and make sure it was fair? At the time that that issue was raised, we were so far into this process that it was clearly a delay tactic. And again, that issue was addressed and adjudicated by the trial court judge who said, no, they're not necessary parties. Cindy, as a beneficiary, has an absolute right to maintain an action against the trustee of the trust. And no delay has occurred now as a result of this action? I'm not sure. Well, you were worried that there might be an additional delay before trial, but as a result of what we're now going through, there's no delay that's happened? In my opinion, all my client has been out of it since 2006 when she received the compromised settlement amount. I really can't speak as to what's going on. We provided for the West State property, West State Street property, to be sold, which the parties, I think, now in hindsight, realize that that property wasn't worth near what it was valued back in 2006. So I think that's the best way I can answer that, Your Honor. Your client settled, part of the settlement agreement was personal funds from Bitsy? Correct. Okay, but weren't Bitsy's personal funds funds that she improperly took from the trust? That was our position, allegedly, yes. So why would your client have a disproportionate share of the proceeds from the trust under the guise that, well, we went after Bitsy personally for it? Well, again, that goes back to the issue of the duty. What duty does she have to me, Cindy, my client, as a beneficiary? She has no duty to the other beneficiaries of her same class or the trust in general. And to the extent that through her efforts, while the others sat on the sideline, not paying their attorney to do anything, sitting back on the sideline, that we went out and actually recovered from Bitsy, which, you know, we don't know what the nature of those funds that Bitsy paid Cindy were from. You could assume possibly that they were from the ill-gotten gains of the trust, but at that point it didn't matter. There wasn't enough funds, liquid funds, in the trust. And that's another important part. At that time there was only $700,000 of liquid assets. They're still fighting right now today over some of the illiquid assets, which now have been liquidated. The West 8th Street property hasn't sold. And they're arguing about that right now, how that should be divided. But that doesn't affect my client because we've been out since 2006. Thank you very much. Thank you, Your Honor. Mr. Leibovitz, proceed. Thank you, Your Honor. Well, as a matter of fact, Cindy Hirschlag received almost every dollar because she received $425,000, which was practically the present value of her portion of the annuity at the time she received it. So Cindy Hirschlag got paid off and took off. It's my argument that the defendants had an obligation from the very beginning to include the plaintiffs in the prior litigation as partners. You keep saying that, but can you point to something in the statute that creates this fiduciary responsibility between beneficiaries? Not fiduciary responsibility, but by Civil Practice Act and by the case law, they are beneficiaries of this trust. All beneficiaries of a trust are to be included as parties in litigation concerning the trust unless their rights are adequately and properly represented by the representatives who are part of this trust. And clearly, that was not the case here. But whose responsibility is it to take your clients and bring them into this lawsuit? The first lawsuit, I'm sorry. It would have been the responsibility of whoever filed the previous lawsuit, and that would have been... So you're saying that if one beneficiary wants to protect his or her rights, they have an inherent obligation to bring along every other beneficiary of a trust. Unless... And they cannot litigate their own interest. They can litigate their own interest in the litigation, but they have to bring in the other beneficiaries of the trust at the beginning when the suit is originally filed, yes. And you're hanging your hat on the Civil Practice Act. Civil Practice Act and the case law, which was cited. Your position is they have to be joined, they have to be brought in either voluntarily to the extent that they are coming in kicking and screaming, or they have to be brought in kicking and screaming. But they have to be brought in. They have to be joined. They have to be joined, yes. Your notice or actual notice is insufficient. Well, the notice would have been in mitigating circumstance, but I would argue, yes, that's insufficient. Well, there is no such thing. If it's a void order, it relates to jurisdiction. And if they're necessary, they're necessary. And the fact that you send them notice doesn't suggest anything other than possibly creating an estoppel such that your clients couldn't be raising any of the arguments you're raising based upon an estoppel. But when you start talking about necessary parties, if they're necessary parties, then they have to be joined and notice is not sufficient. That's my argument. And basically... Again, counsel, did you ever allege in count two the theory that you just put forth here this morning? Did I allege what? Did you allege in your... I'm sorry if you can't hear me. Did you allege in your complaint the theory that you just espoused this morning? Indispensable party, civil practice act. Those were not specifically alleged. And we're here on a motion to dismiss that was granted based on your complaint. And the fact that Lee was not granted to file an amended complaint. Nor saw it, correct? Well, it's my position there was no opportunity. Neither one of the... Well, Herschelag had no concern about the remaining annuitants, so she certainly didn't represent the class of the Packard annuitants. She got paid in full. And I agree with the point that was pointed out, that so what if Bitsy funded the Herschelag settlement? The funds that she settled it with was trust funds. Funds that she wrongfully diverted. Counsel, did you allege that anywhere in count two? No. The theory that the money that Ms. Herschelag received pursuant to the settlement was in fact monies under Bitsy's control that she allegedly misappropriated from the trust. No, I don't think we knew that at the time that the complaint was filed. I believe I asked Mr. Calkins, maybe it was Hardiman, but I asked one of them. It was Mr. Hardiman about what's your position relative to the allocation that was determined, which Mr. Hardiman said was based upon an exercise in mathematics. Is it your contention that the allocation was insufficient, or is it your allegation that although the allocation was sufficient, your clients never got the distribution that they were entitled to based upon that proper allocation? It's both. Okay, tell me. We were never a party to the calculations or the discussion regarding the calculations. I've run my own calculations, and the math comes out a lot different from me. What is your ratio? Instead of 70-30, what do you think it should be? Well, it would be approximately, at this point it's 28%. And according to the court order, the remaining Packard annuitants have an 18% share. So I would say 10% higher than 28 would be 38% is what the Packard annuitants as a group should have received. And as far as these calculations from the estate tax return, I'm not sure what that's even all about. If I understand your argument, then the allocation should have been 62-38? Yes. And if Ms. Herschlag settled for 30, then she settled for 8% less than what she was entitled to? I don't know that she settled for 30. I can tell you this, that if you take the present value of that portion of the annuity that was allocated to Herschlag, it comes out to just about $425,000. Why did you say present value? Isn't that kind of like after the fact, Monday morning quarterbacking? Why wouldn't you be taking the amount that was in existence at the time the negotiated settlement took place? Well, because it was a 20-year annuity, payable installments, annual installments. And so Cindy Herschlag got present money about, let's see, six years into the annuity. So she got the equivalent of the full amount of her share. So because she was paid earlier than your client, she got the 38%? Yes. And she was paid earlier than provided under the terms of the trust agreement. It's supposed to be a 20-year annuity. She got paid out in full after six years and settled. If she got paid out in full, my base understanding of paid out in full means that if you get paid like in a lottery and you get an early payment sum, it's not the full amount that you would have collected with the annuity. Well, if you, quote, unquote, took 20 years to get the lottery winnings, if you took it up front, it wouldn't be as much. Right. So would you explain what you meant when you said she got full, complete value? She got full, complete present value. She didn't get the full amount that she would have received over the course of 20 years. But given the value of money over time, she received at the end of six years, which would have amounted to full value. And to use your analogy, she received what a lottery annuitant or a lottery winner would have received if they take a cash lump sum in the beginning. Okay. Thank you. Thank you. Do you have any other questions? Very well.